### 13224

WARING, RECEIVER, v. JOHNSON *ET AL.*

(159 S. E., 829)

*Mr. Paul A. MacMillan,* for appellant,

*Messrs. Waring & Brockinton,* for respondent,

August 10, 1931.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The respondent, Charles W. Waring, as receiver of the People's Federation Bank, recovered a judgment, in the Court of Common Pleas for Charleston County, on April 11, 1928, against several parties, for the sum of $12,699.08. On appeal to this Court, that judgment was affirmed. See *Waring, Receiver, v. Johnson et al.,* 152 S. C., 317, 149 S. E., 840. Various collections were made on account of the judgment from certain of the judgment debtors. One of the judgment debtors was the estate of Eugene Gadsden, of which Eugene Duncan is executor.

Duncan, as executor of the estate of Gadsden, endeavored to compromise the liability of the estate as to the judgment debt, and finally a verbal agreement was reached, whereby the receiver was to accept in full of the estate's liability the sum of $8,500.00, which was to be paid within sixty days from November 5, 1929. The payment was not made within

the specified time; extensions were asked for and granted, and some payments on the account were made. In April, 1930, the executor and the receiver agreed that the estate would pay the balance of the proposed compromise settlement in cash, and the receiver was requested to obtain an order from the Court authorizing the compromise so as to protect the estate when payment was made. Payment was not made, however, and other extensions were granted until June, 1930, and about that time the executor promised to close out the matter within the following month.

His Honor, Circuit Judge Grimball of the Ninth Judicial Circuit, presiding therein at the time, was looking forward to being away from Charleston on a vacation. The attorneys for the receiver ex parte appeared before him and obtained the necessary order allowing the compromise, with the understanding that the same should not be filed, but was to be left in the hands of the receiver's attorneys, and upon payment of the amount due to the receiver by the executor, under the agreement of compromise, then the order was to be filed.

The order of Judge Grimball, dated June . . . ., 1930, authorized the receiver to make settlement with Duncan, as executor of the estate of Gadsden for the sum of $8,500.00 cash, and directed that upon the payment of the said sum the receiver should release the estate of Gadsden from the lien of the judgment theretofore entered. The order was never filed in the office of the Clerk of Court.

The matter continued to drag along, but the full amount due under the compromise settlement was not paid. On September 19, 1930, the attorneys for the receiver notified Duncan and his attorneys that the agreement was terminated by the estate's failure to make the necessary payment. About October 8, 1930, Duncan, individually and as executor of Gadsden's estate, brought an action against various parties, including the receiver of the bank, for the purpose of marshaling the assets of the estate and for an accounting.

It was alleged in the complaint that the plaintiff had paid to the receiver on account of the judgment the sum of $5,253.02, which amount was more than the *pro rata* share of the estate to which the receiver was entitled, and the Court was asked to give judgment against the receiver for such sum as should be found that he had been overpaid.

The receiver, in his answer to the complaint, alleged that Gadsden in his lifetime had conveyed certain real estate for the purpose of evading payment of the judgment, facts which he claimed the receiver did not know when he agreed to the compromise settlement, and he asked the Court to set aside those conveyances.

About the time of this suit, or a little before, the attorneys for the receiver appeared before Judge Grimball, informed him that the compromise settlement had not been carried out, and requested that his order of June . . . ., 1930, be revoked. Judge Grimball did not think it necessary to issue an order of revocation, but destroyed the order.

A little later Duncan, the executor, offered to turn over to the receiver a check for $2,246.98, which it was claimed was the balance due on the proposed compromise, and demanded a release in full of the judgment; but the receiver refused to accept as full payment the amount offered, and demanded the entire amount of the balance due on the judgment.

The attorneys for Duncan, as executor, gave notice of a motion to be heard before Judge Grimball on December 23, 1930, for an order requiring the receiver to release the estate of Gadsden from the lien of the judgment obtained by him "in accordance with the order of this Court" (referring to Judge Grimball's order of June . . . ., 1930, which he had destroyed). The motion was heard and refused. And from that order, Duncan, as executor of the estate of Gadsden, has appealed to this Court.

In the three exceptions made by the appellant, he takes these positions: That the first order of Judge Grimball was

the judgment of the Court, and, as such, it should have been enforced; that the receiver is an officer of the Court, and he should not be allowed to substitute his wishes for the positive directions of the Court; and that the receiver should be required to carry out the order of the Court, for the reason that because of it the appellant had parted with considerable money on the faith of that order.

We do not think it the proper practice for orders of the Court or a Judge at chambers to be withheld and retained by an attorney in the cause. A practice of this kind often leads to confusion and misunderstanding. When a Judge, in either open Court or at chambers, grants an order, it should be forthwith filed with the Clerk of Court and become a public record, that those who are interested therein may not only know that it is a valid order and subject to enforcement, but that they may be acquainted with the terms thereof.

But nearly all general rules have exceptions. In the instance in the case at bar, Judge Grimball was trying to accommodate the attorneys, and the attorneys were trying to accommodate Judge Grimball in the matter of his vacation. There was nothing improper in what either Judge Grimball or the attorneys for the receiver did, but because of failure to strictly comply with the proper procedure, confusion and misunderstanding arose. If Duncan, the executor of the estate of Gadsden, had lived up to his verbal agreements, the matters revolving around the issuance of the order and the destruction of it would not have come up; in fact, the order would not have been destroyed, and the matter would not have come to this Court.

If Gadsden's estate was worth the judgment, the depositors of the bank, for whom the receiver was acting, were entitled to collect that judgment in full. Any reduction in the amount of the judgment was a favor to the Gadsden estate. The order of Judge Grimball was conditional, and Duncan, the executor, should have complied with those

conditions. The Court and the receiver were granting a favor to the estate.

"A party to whom a favor has been granted by an order upon conditions must, at his peril, take notice of the order and comply with the conditions, according to the fair construction of their meaning, and upon such performance the order becomes absolute without any new order to that effect. Noncompliance with such terms or conditions gives a result equivalent to a denial of the favor. In the case of noncompliance the order may be vacated on motion. Where a motion is granted conditionally upon the failure of the opposing party to do a certain act, if the act is not performed the moving party may show by affidavit such failure to perform and thereupon apply ex parte for an order granting the motion absolutely." 42 C. J., 531, 532.

"The power of the Court to correct errors and to modify or vacate decrees and the proceedings to accomplish those objects depend upon the character of the decree, the character of the error or defect, and the time when the application is made. It may be laid down as a broad general proposition that the power of correcting and changing findings and orders exists, unimpaired by any limitation, so long as the cause remains open and within the jurisdiction of the Court." 21 C. J., 701.

"While the cause was before the Court, any order made by the Chancellor was within his entire control, and could have been changed, modified or reversed, according to the views he at any time entertained, before he finally discharged himself from it." *Tindal v. Tindal*, 1 S. C., 111.

Even if the order destroyed by Judge Grimball was a consent order, as contended by the appellant, the consent was dependent upon the appellant carrying out its terms, and when the appellant failed to perform the conditions, the consent of the receiver to the issuance of the order was no longer binding upon him. Duncan, the executor, not only failed to carry out the terms of the order, but

when he brought his suit to require the receiver to refund some of the money which had been paid to him on the judgment, there was a repudiation of any agreement on the part of the executor, and the receiver then had the right to likewise repudiate the agreement.

This decision does not affect the right of the executor, if he has such right, to recover from the receiver in the suit to marshal the assets of Gadsden's estate, any sums of money improperly paid by the executor to the receiver; that matter is not up for determination at this time.

We are unable to find any merit in the appeal, and the order appealed from is affirmed.

MESSRS. JUSTICES COTHRAN, STABLER, CARTER and BONHAM concur.